UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | 5:20-cv-01373-JGB-SHK | Date: | December 18, 2023 |
|---|---|---|---|
| Title | U.S. ex rel. Randy Jacobs v. Advanced Dermatology & Skin Cancer Specialists, P.C. | | |

Present: The Honorable  Shashi H. Kewalramani, United States Magistrate Judge

| D. Castellanos | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings (IN CHAMBERS):** ORDER GRANTING DEFENDANT ADVANCED DERMATOLOGY & SKIN CANCER SPECIALISTS, P.C.'S MOTION TO COMPEL A PRIVILEGE LOG FOR RELATOR'S COMMUNICATIONS WITH THE GOVERNMENT AND OTHER THIRD PARTIES [ECF NOS. 122, 193]

    On June 13, 2023, defendants Advanced Dermatology & Skin Cancer Specialists, P.C. ("Advanced Dermatology") and Dr. Jesse Mitchell (collectively, "Defendants") filed a Motion To Compel A Privilege Log For Relator's Communications With The Government And Other Third Parties ("Motion to Compel" or "MTC") against plaintiff-relator Randy Jacobs ("Relator"). Electronic Case Filing Number ("ECF No.") 122, MTC. On July 5, 2023, Relator filed his Opposition to Defendants' Motion to Compel Privilege Logs ("Opposition" or "Opp'n"). ECF No. 129, Opp'n. On July 12, 2023, Defendants filed their Reply In Support Of the Motion to Compel ("Reply"). ECF No. 135, Reply.

    On November 13, 2023, Defendants filed their "Supplemental Memorandum, Based On New Intervening Facts, In Support Of It's Motion to Compel A Privilege Log For Relator's Communications With The Government and Other Thirds Parties" ("Supplemental Brief" or "Suppl. Brief"). ECF No. 193, Suppl. Brief. On November 28, 2023, Relator filed his "Response To [Defendants' Supplemental Brief]" ("Supplemental Opposition" or "Suppl. Opp'n"). ECF No. 209, Suppl. Opp'n.

    After reviewing the parties' arguments, for the reasons set forth in this Order, the Court GRANTS Defendants' Motion to Compel and Relator will be required to provide a privilege log pursuant to the timeline described in the Conclusion of this Order.

## I.   BACKGROUND

### A.   Relevant Background

On July 9, 2020, Relator filed a qui tam complaint ("Complaint" or "Compl.") against Defendants under the False Claims Act ("FCA"), 31 U.S.C. § 3729 et seq., and the California False Claims Act, Cal. Gov't Code § 12651, et seq. ECF No. 1, Compl. at 4.[1] The operative complaint in this case is Plaintiff's First Amended Complaint ("FAC"). ECF No. 34, FAC. The discovery cut-off date in this matter is April 18, 2024. ECF No. 99, Joint Stipulation to Extend Discovery Cut-Off Date.

During the course of discovery, Defendants generally described its discovery requests, including requests for production of documents ("RFPs") and interrogatories (collectively, "Requests"), sent to Relator seeking "documents exchanged between Relator and third-party witnesses Relator relied on to draft his complaint and filed declarations [] in opposing the motion to dismiss" as well as "documents exchanged between Relator and the Government, including Relator's written disclosure statement under 31 U.S.C. § 3730(b)(2)." ECF No. 122, MTC at 9; see also ECF No. 129, Opp'n at 12-14. Some of the Requests refer to third-party witnesses whom Relator had disclosed as being the source of relevant allegations underlying Relator's claims. Id. at 14.

"In his responses, Relator objected on the basis of the attorney work product and attorney-client privilege[.]" ECF No. 122, MTC at 9. "During the meet-and-confer process, Relator agreed to amend his responses to state whether he was withholding documents based on his privilege objections." Id. Relator served amended responses "stating that he is withholding documents as privileged for most of the requests at issue" and that he would not "provide a privilege log for any of the withheld documents." Id. at 9-10. For example, "in response to the request for communications with Cyrus Pratt (the former Advanced Dermatology employee whose allegations are identified in the FAC), Relator said:"

> Based on the aforementioned objections, Relator is withholding certain communications with Mr. Pratt without logging them on a privilege log. Relator believes that all communications with Mr. Pratt pertinent to this case would be covered by the privilege or work product protection. However, Relator will produce communications about the subject matter of this case that are not covered by work product or other applicable privileges or protections.

Id. at 10. "The amended responses do not identify or describe the withheld documents or whether they have any attachments." Id. On May 30, 2023, the Court held an informal conference regarding Relator's refusal to provide a privilege log and ordered the parties to submit briefs on the issue. ECF No. 121, Minute Order.

---

[1] All pagination references for filings on the docket are to the ECF-stamped page number.

While this Motion to Compel was pending, on September 22, 2023, Relator conducted the deposition of Cyrus Querol ("Querol")[2], a former physician's assistant at Advanced Dermatology who later worked for Relator's office. ECF No. 193, Suppl. Brief at 6-7. At the deposition, Relator's counsel questioned Mr. Querol about Mr. Querol's recollection of the allegations attributed to Mr. Querol in the FAC. Id. at 7. Mr. Querol denied making certain statements to Relator about his former employment. Id. Relator's counsel then introduced a letter which Relator's counsel represented to be a summary of what Mr. Querol told Relator as an exhibit and questioned Mr. Querol about its contents. Id. at 7-8. Relator had not produced this letter in discovery nor included it on a privilege log and was apparently withholding this letter because it contained information protected under the attorney work product doctrine. Id. at 8. Defendants subsequently sought to provide supplemental briefing on why the Relator's use of the unproduced letter highlights the need for a privilege log, which Relator opposed. See ECF Nos. 173; 189. The Court granted the request to provide supplemental briefing. ECF No. 190.

Thus, the Court addresses both the parties' briefing on whether to compel a privilege log and the parties' supplemental briefing on the need for a privilege log in light of the events that occurred at Mr. Querol's deposition.

  **B.**  **The Parties' Arguments**

    **1.**  **Defendants' Motion to Compel**

Defendants' Motion to Compel takes issue with the fact that "Relator acknowledges he is withholding documents as purportedly privileged, *yet he refuses to identify them or provide a privilege log*[.]" ECF No. 122, MTC at 7 (emphasis in the original).

Defendants first argue that "[a] privilege log is needed to enable the parties to assess the validity of Relator's claim of protection over documents he is withholding." Id. at 10. In particular, "when a litigant communicates with a non-party witness, a claim of protection over the written communications likely cannot be assessed without certain information about the documents." Id. at 12. Defendants assert that Federal Rule of Civil Procedure ("Rule" or "Fed. R. Civ. P.") 26 requires the party "withhold[ing] information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must . . . describe the nature of the documents, communications, or tangible things not produced or protected." Id. at 10. Defendants state that a privilege log satisfies this requirement. Id. (citing Mayorga v. Ronaldo, 606 F. Supp. 3d 1003, 1017 (D. Nev. 2022)). Moreover, the privilege log must "identify[] the document, its date, the basis for withholding, and any other information necessary to establish the elements of the privilege." Id. at 11 (citing In re Grand Jury Investigation, 974 F.2d 1068, 1070 (9th Cir. 1992)). Defendants also point out that failure to provide a privilege log may result in waiver of the privilege. Id. at 11 (citing Burlington N. & Santa Fe Ry. V. U.S. Dist. Ct., 408 F.3d 1142, 1150 (9th Cir. 2005)).

---

[2] Defendants' Requests and Motion to Compel refer to a non-party witness who worked for Advanced Dermatology as "Cyrus Pratt." ECF No. 122, MTC at 10. It is not clear to the Court whether "Cyrus Pratt" is the same person as "Cyrus Querol," whom Relator deposed.

Defendants then appear to deviate from the main crux of their motion, i.e. that a privilege log is required, and argue that "courts are split on 'the degree of work product protection afforded to disclosure statements made to the government pursuant to the FCA.'" Id. at 12 (citing U.S. ex rel. Lewis v. Cal. Inst. of Tech., No. CV 18-5964 CAS (RAOx), 2020 WL 13547790, at *7 (C.D. Cal. Nov. 18, 2020)). Defendants assert that "[t]he [privilege] analysis focuses on the actual contents of the disclosure statement," and some courts "conclude that the [disclosure] statement should be produced but with certain portions redacted." Id. at 13. Additionally, Defendants argue "[a]s for other written communications with the Government, courts have recognized a qualified protection based on joint prosecution when the Government has intervened," but here, the "the Government decline[d] to intervene" so "there is no . . . common interest protection." Id. Nevertheless, "even those courts that conclude the [disclosure] statement is not discoverable, do so *after* conducting in camera review," id. (emphasis in the original), and "courts have required relators to produce a privilege log when they withhold . . . communications [with the Government] from discovery," id. (citing U.S. ex rel. Reddell v. Dyncorp Int'l, Civil Action No. 1:14-cv-86, 2019 WL 12875494, at *7 (E.D. Tex. Sept. 17, 2019)).

Next, Defendants assert that "[n]o blanket protection exists for communications between Relator and third parties, including documents third parties provided to Relator." Id. at 15 (citing Garcia v. Stemilt Ag Servs. LLC, No. 2:20-cv-00254-SMJ, 2020 WL 6870997, at *5 (E.D. Wash. Dec. 21, 2020) for the proposition that "[a]lthough witness statements 'prepared by counsel;' are work product, 'witness statements solicited by counsel' are not.").

Last, Defendants argue their request for "Relator's written communications with two categories of non-parties: (1) the Government and (2) individual witnesses" are both relevant and proportional to the needs of the case, though "[n]either Rule 26(b)(5) nor case law applying the rule condition the requirement of a privilege log on a prefatory showing of relevance and proportionality." Id. at 16 & 16 n.3.

### 2. Relator's Opposition

Relator first argues that Defendants' discovery strategy is improper because Defendants "have not deposed a single witness nor sent a single subpoena to any third party for information," and instead seek "discovery of materials that are plainly protected by attorney-client privilege and/or the work product doctrine: (1) the identities of witnesses that Relator and his attorneys contacted in relation to this litigation and (2) Relator's and his attorneys' communications with the federal government [in] this qui tam litigation." ECF No. 129, Opp'n 10-11.

First, Relator argues the identities of witnesses and his communications with them are protected by the work product doctrine. Relator contends these Requests and a "privilege log identifying the potential witnesses Relator's counsel had communicated with" would force Relator to "expose his own playbook as to which witnesses he thinks are most important" and "what [those witnesses] told Relator's counsel or what Relator's counsel found that they know." Id. at 15-16. "If the identity of interviewed witnesses is disclosed," Relator argues, "opposing counsel can infer which witnesses counsel considers important, revealing mental impressions and

trial strategy," which "are at the heart of the work product rule." Id. at 18 (citing In re MTI Tech. Corp. Sec. Litig. II, No. SACV 00-0745 DOC (ANx), 2002 U.S. Dist. LEXIS 13015, at *8 (C.D. Cal. June 13, 2002)). In particular, Relator takes issue with Defendants' RFP No. 44, which requests "all correspondence or communications of any kind with current or former employees, agents, contractors, or vendors of Advanced Dermatology or Dr. Mitchell." Id. at 17. Additionally, Relator argues "[t]he importance of preserving the 'zone of privacy' is particularly acute in the context of a fraud investigation, because nonparty witnesses may reasonably fear retaliation for speaking out." Id. at 20 (citations omitted). As such, requiring a privilege log identifying witnesses "would invariably reveal core work product information." Id. at 19-20 (citing several cases where "courts have declined to compel parties to produce privilege logs regarding the communications with witnesses").

Next, Relator argues that communications with the Government are protected under the joint prosecution/common interest privilege. Id. at 23. "The common interest privilege is an anti-waiver doctrine that prevents a party from waiving privilege through its communications with another party with a shared legal interest." Id. at 23-24. Relator asserts that the common interest privilege applies even where the Government declines to intervene in an FCA case because the Government remains a "real party in interest" and has "continuing rights in the action" so that "for all practical purposes, plaintiff and the government are essentially the same party" or "[a]t a minimum . . . co-plaintiffs (with or without intervention), but more appropriately, the Government is Relator's 'client'[.]" Id. at 25 (citations omitted). Further, Relator argues "the Government independently investigates FCA cases and relies on the same joint prosecution (common interest) privilege to protect its investigative privilege." Id. at 26. Thus, the "unique" "private-public arrange" under the FCA "intertwines the parties' interests and obligations in a more material way than just as 'co-parties' with a 'common interest.'" Id. (citations omitted). Accordingly, Relator asserts "the unique relationship of the government and the relator in *qui tam* cases requires the sharing of the work product generated between the relator and his attorney with the government in order for the case to proceed." Id. at 26-27 (citing U.S. ex rel. Purcell v. MWI Corp., 209 F.R.D. 21, 27 (D.D.C. 2002)).

Further, Relator argues "no court has held that communications or documents exchanged between relator's counsel and the government are *not* work product; the only question has been whether a particular document may be fact work product (producible if Defendants can show substantial need and undue hardship) or opinion work product (almost never discoverable)." Id. at 27 (emphasis in the original). In particular, Realtor asserts that "[i]t is virtually undisputed that a relator's written disclosure statement is protected under the work product doctrine." Id. at 28.

Relator contends that "[c]ourts do not require a party to produce a log where it would not be proportionate to the needs of the case, because the type of information targeted is . . . overwhelming likely to be protected from discovery" and because "[l]ogging these materials would be burdensome for Relator's counsel, while providing no corresponding benefit to Defendants." Id. at 30. Relator argues that Defendants have not established a "substantial need" for any work product-protected communications or documents protected by the common interest privilege, and thus have not established a need for a privilege log. Id. at 27.

Finally, Relator requests that if the Court compels a privilege log: (1) the log should be a categorical privilege log that "list[s] in aggregate the numbers of withheld documents, the time periods encompassed by the withheld documents, and an affidavit representing that the documents were protected under the attorney-client privilege"; (2) the log not contain identifying information of witnesses; and (3) the Court also compel Defendants to produce a log for "all responsive communications among common interest parties or counsel" and "all communications with potential witnesses regarding the subject-matter of this lawsuit." Id. at 33.

### 3. Defendants' Reply

Defendants assert in the Reply that "[t]he sole issue presented by this Motion is whether Relator must provide [a] privilege log identifying [the requested] documents—not the validity of [Relator's] privilege claim over unidentified documents." ECF No. 135, Reply at 6. Defendants assert that "Relator does not have a single case saying he need not put any of those withheld documents on a privilege log—as required by the Federal Rules." Id. (citing Fed. R. Civ. P. 26(b)(5)(A)).

Defendants point out that Relator's arguments regarding the identity of witnesses is inapplicable here because Defendants sought that information through an interrogatory, not a document request, and therefore is not subject to a privilege log. Id. at 8. Defendants highlight that "the majority of the document requests at issue are tailored to specific witnesses *Relator already identified in his complaint and declarations submitted in opposition to Defendants' motion to dismiss*." Id. (emphasis in the original). Defendants also counter that "courts are split as to whether the identity of witnesses [interviewed] is protected from discovery as work product" and where the witnesses "have knowledge of the facts alleged in the complaint" those witnesses' identities are not protected. Id. at 9 (citations and internal quotation marks omitted). Defendants argue that Relator failed to explain "how communications or documents exchanged between Relator *himself* and these third-party witnesses—*without the involvement of counsel*—could be subject to work-product." Id. (emphasis in the original).

As to documents exchanged with the Government, Defendants argue "Relator again tries to distract the Court with certain narrow categories of documents that might be privileged," namely the disclosure statement, but "fail[ed] to address other documents exchanged with the Government." Id. at 11. Defendants contend that certain portions of the disclosure statement and other documents exchanged with the Government may be privileged while others are not, and "[f]or this reason, courts require a privilege log." Id. Defendants also point out that Relator "does not provide . . . any authority saying that communications, or documents exchanged with the Government *after* the Government declines to intervene are protected" from disclosure. Id.

Finally, Defendants state that their discovery does not seek communications between a client and his lawyer. Id. at 12. Defendants also argue that no attorney client relationship exists between Relator and the Government, and Relator's attempts to analogize to the attorney client relationship "does not help Relator establish the blanket privilege he needs to avoid providing a privilege log." Id.

#### 4. Defendants' Supplemental Brief

In the Supplemental Brief, Defendants argue that Relator's counsel's use of "a purportedly privileged letter that had not been produced" in the deposition of a third-party witness, Mr. Querol, underscores the need for a privilege log. ECF No. 193, Suppl. Brief at 5. Defendants argue that a privilege log is needed to evaluate the scope of potential subject matter waiver for Relator's communications with Mr. Querol based on the disclosure of the letter. Id. at 9. Defendants also assert that Relator previously refused to produce communications with Mr. Querol claiming work product, but waived the "purported 'work product' claim" by disclosing at the deposition. Id. at 10. Defendants argue that Relator has potentially waived any claim of privilege over documents of the same subject matter, such as text messages with Relator pertaining to this case that Mr. Querol identified. Id. Defendants contend that "Relator cannot (1) continue to withhold relevant documents under highly tenuous 'work product' claims and (2) then ambush Defendants' counsel and other witnesses with those documents at future depositions or at trial." Id. at 11.

#### 5. Relator's Response

Relator responds to Defendants' Supplemental Brief by asserting that the letter is a witness statement that is protected as work product, regardless of whether it was prepared by Relator and not counsel and before the inception of litigation. Id. at 4. Relator then argues that a non-party witness declaration is work product "right up until the moment it is filed" or otherwise used in litigation, such as in a deposition. Id. at 6-7 (citing Intel Corp. v. Via Techs., Inc., 204 F.R.D. 450, 451 (N.D. Cal. 2001). Relator also asserts that "[t]he vast majority of courts disagree with Defendants['] entire premise that they are entitled to a privilege log listing the witnesses Relator's counsel has communicated with or a list of witness declarations Relator's counsel has obtained." Id. at 7. Relator further argues that "[i]nnumerable courts have held that waiving work product protection for the final version of a document does not waive work product for earlier drafts or related communications." Id. at 8 (collecting cases).

Relator asserts that Defendants do not explain "*why* an itemized privilege log is necessary to litigate their waiver arguments." Id. at 9. Relator argues that Defendants knew that he was withholding communications with Mr. Querol as work product, but did not "challenge Relator's work product claim regarding those documents before the deposition." Id. at 10. Relator reiterates his contention that a privilege log identifying witnesses and the subject matter of their discussions would disclose the work product he is trying to protect. Id. at 12.

### II. DISCUSSION

#### A. Relevant Legal Standards

##### 1. Privilege Log

Rule 26(b)(5)(A) states that a party "withholding otherwise discoverable by claiming that the information is privileged or subject to protection" must: "(i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or

protected, will enable the other parties to assess the claim." Failure to describe the nature of the documents or communications withheld as required by Rule 26 may constitute an "implied" waiver of the privilege or protection. Clarke v. Am. Commerce Nat'l Bank, 974 F.2d 127, 129 (9th Cir. 1992).

Rule 26 "does not attempt to define for each case what information must be provided when a party asserts a claim of privilege or work product protections." Fed. R. Civ. P. 26(b) advisory committee's note to 1993 amendment. The Ninth Circuit has "previously recognized a number of means of sufficiently establishing [a claim] of privilege [or work product], one of which is the privilege log approach." In re Grand Jury Investigation, 974 F.2d at1071 (citing Dole v. Milonas, 889 F.2d 885, 888 n.3, 890 (9th Cir. 1989). "Although a document-by-document listing, including identification of all authors and recipients of allegedly privileged material, is not necessarily the only method of properly claiming that responsive documents may be withheld from production on the basis of a privilege or the attorney work-product doctrine, it is the normal method." J2 Global Comm'ns, Inc. v. Protus IP Solutions, Inc., CV 06-0566 DDP (AJW), 2010 WL 11519492, at *1 (C.D. Cal. Feb. 4, 2010); see also In re Imperial Corp. of Am., 174 F.R.D. 475, 478 (S.D. Cal. 1997) ("This court recognized that one method identifying documents to which claims of attorney-client privilege or work product are asserted is a document-by-document log. That format has been, undoubtedly will, and should remain, the traditional format.")

The Ninth Circuit has found a log sufficient where it identifies: (1) the author or "the attorney and client involved;" (2) "the nature of the document;" (3) "all persons or entities shown on the document to have received or sent the document;" (4) "all persons or entities known to have been furnished the document or informed of its substance;" and (5) "the date the document was generated, prepared, or dated." In re Grand Jury Investigation, 974 F.2d at 1071 (citing Dole, 889 F.2d at 888 n.3).

However, where the documents withheld are voluminous, such a document-by-document listing may be unduly burdensome. Fed. R. Civ. P. 26(b) advisory committee's note to 1993 amendment.; see also In re Imperial Corp., 174 F.R.D. at 479 (rejecting a document-by-document privilege log and compelling a categorical privilege log where the documents requested sought "all documents between plaintiffs' various counsels and plaintiffs themselves concerning this lawsuit," which were clearly privileged and voluminous).

### 2. Work Product Doctrine

"The work product doctrine, codified in Federal Rule of Civil Procedure 26(b)(3)," is a qualified protection limiting discovery of "documents and tangible things prepared by a party or his representative in anticipation of litigation." In re Grand Jury Subpoena (Mark Torf/Torf Env't Mgmt.), 357 F.3d 900, 906 (9th Cir. 2004) (quoting Admiral Ins. Co. v. U.S. Dist. Ct., 881 F.2d 1486, 1494 (9th Cir. 1989)); see Fed. R. Civ. P. 26(b)(3)(A). The purpose of the work product doctrine is to "preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy with an eye toward litigation . . . without their adversaries invoking the discovery process to pry into the litigators' minds and free-ride off them." In re Grand Jury, 23 F.4th 1088, 1093 (9th Cir. 2021) (internal quotation marks and citations omitted). "Given the rationale for the privilege, the [work product doctrine] distinguishes between 'opinion' work-

product, which consists of the 'mental impressions, conclusions, or legal theories of an attorney or other representative of a party' and 'ordinary' or 'factual' work-product, which consists of factual material prepared in anticipation of litigation." U.S. ex rel. Bagley v. TRW, Inc., 212 F.R.D. 554, 559 (C.D. Cal. 2003) (citations omitted).

"The work product doctrine . . .is, like other privilege rules, to be narrowly construed because its application can derogate from the search for the truth." Roberts v. Heim, 123 F.R.D. 614, 635 (N.D. Cal. 1988). The party claiming work product protection bears the burden of establishing that the work product doctrine applies. U.S. v. Richey, 632 F.3d 559, 566 (9th Cir. 2011).

Even where documents or communications fall under the work product doctrine, however, the Supreme Court has stated:

> We do not mean to say that all written materials obtained or prepared by an adversary's counsel with an eye toward litigation are necessarily free from discovery in all cases. Where relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to preparation for one's case, discovery may properly be had.

Hickman v. Taylor, 329 U.S. 495,510 (1947). Accordingly, documents protected by the work product doctrine "may only be ordered produced upon an adverse party's demonstration of 'substantial need [for] the materials' and 'undue hardship [in obtaining] the substantial equivalent of the materials by other means." In re Grand Jury, 357 F.3d at 906 (citing Fed. R. Civ. P. 26(b)(3)). "Even when a court orders disclosure of work product, 'it must protect against disclosure of the mental impressions, conclusion, opinions, or legal theories of a party's attorney or other representative concerning the litigation.'" Jones v. Hernandez, 322 F.R.D. 411, 412 (S.D. Cal. 2017) (quoting Fed. R. Civ. P. 26(b)(3)(B)).

As with other privileges, the protection afforded under the work product doctrine may be waived. U.S. v. Nobles, 422 U.S. 225, 239 (1975). The "disclosure of work product to a third party[, however,] does not waive the protection unless such disclosure is made to an adversary in litigation or substantially increased the opportunities for potential adversaries to obtain the information." U.S. v. Samina Corp., 968 F.3d 1107, 1121 (9th Cir. 2020) (internal quotation marks and citations omitted). Whether waiver has occurred is a "fact-intensive analysis requi[ring] a consideration of the totality of the circumstances and is ultimately guided by the same principle of fairness that underlies much of our common law doctrine on waiver by implication." Id. at 1122. The scope of such a waiver is only with respect to matters actually disclosed, as well as other communications on the same subject. Hernandez v. Tanninen, 604 F.3d 1095, 100 (9th Cir. 2010).

### 3. **Common Interest/ Joint Defense Doctrine**

The Ninth Circuit has recognized the common interest/ joint defense privilege for parties with a common interest, and their counsel. U.S. v. Gonzalez, 669 F.3d 974, 977 (9th Cir. 2012). The privilege protects extends beyond criminal defense situations:

> Whether the jointly interested persons are defendants or plaintiffs, and whether the litigation or potential litigation is civil or criminal, the rationale for the joint defense rule remains unchanged: persons who share a common interest in litigation should be able to communicate with their respective attorneys and with each other to more effectively prosecute or defend their claims.

Id. "The common-interest doctrine is not an independent privilege. Rather, it is a narrow exception to the general rule that disclosing information to a third-party constitutes waiver of the attorney-client privilege." Rodriguez v. Seabreeze Jetlev, LLC, 620 F. Supp. 3d 1009, 1019 (N.D. Cal. 2022) (internal quotation marks and citation omitted). In addition to attorney-client communications, "[t]he common-interest doctrine [also] preserves work-product protection over materials communicated to third parties, so long as they generally share the client's interests and are not adversaries, irrespective of whether they have representation." Id. at 1020. "Given that the common-interest doctrine is an anti-waiver exception, the doctrine applies only if the communication at issue is privileged in the first instance." Id. at 1019.

"To establish the existence of a joint defense privilege, the party asserting the privilege must show that: (1) the communications were made in the course of a joint defense effort, (2) the statements were designed to further the joint defense effort, and (3) the privilege has not been waived. U.S. ex rel. Burroughs v. DeNardi Corp., 167 F.R.D. 680, 685 (S.D. Cal. 1996).

### B. **Analysis**

The central question presented by Defendants' Motion to Compel is whether Relator is required to provide a privilege log for documents he is withholding.

Though a qui tam is different from other civil actions, there is no indication that the Federal Rules of Civil Procedure do not apply to the discovery conducted in such an action and Relator has cited no case for this proposal. Specifically, with respect to the issue before this Court, there is no basis to support Relator's blanket refusal to comply with Rule 26(b)'s requirements by withholding various categories of documents—whether they are likely to be protected from disclosure or not—without cataloguing the documents withheld. The plain language of Rule 26(b) contemplates that a description of withheld documents be done "in a manner that, **without revealing information itself privileged or protected**, will enable the other parties to assess the claim." Id. (emphasis added). Morover, "[a]lthough the person from whom discovery is sought decides whether to claim a privilege or protection, the court ultimately decides whether, if this claim is challenged, the privilege or protection applies." Fed. R. Civ. P. 26 advisory committee's note to 1993 amendment.

Only "in rare circumstances [does] some of the pertinent information [to be included on a privilege log] affecting the applicability of the claim, such as the identity of a client," or the identity of undisclosed witnesses, "may itself be privileged." Id. In those rare circumstances, "the [R]ule provides that such information need not be disclosed" on a privilege log. Id. Still, tailoring a description to avoid revealing the information protected does not obviate a party's obligation to provide a description of the documents withheld.

### 1. Communications with Witnesses.

Relator contends that because the "identity of witnesses Relator's counsel has communicated with is part of the work product to be protected, identifying those witnesses on a privilege log would provide the very information" protected by the doctrine. ECF No. 129, Opp'n at 19. However, Relator fails to address the fact that "the majority of the document requests at issue are tailored to specific witnesses *Relator already identified in his complaint and declarations submitted in opposition to Defendants' motion to dismiss*." ECF No. 135, Reply at 8 (emphasis in the original). Relator cites Hernandez v. Best Buy Co. for the proposition that "disclosure of 'all persons interviewed by counsel qualifies for protection as 'intangible' work product," ECF No. 129, Opp'n at 18, while omitting the second half of the quoted material, which states "if [the witnesses' identity] would reveal 'significant insights' into opposing lawyer's case preparation and mental processes." 2014 WL 5454505, at *6. Here, "[n]o such significant insights would be revealed" because Relator "ha[s] already revealed that the witnesses had been interviewed." See Hernandez, 2014 WL 5454505, at *7 (explaining that in Am. Floral Servs. v. Florists' Transworld Delivery Ass'n, 107 F.R.D. 258, 261 (N.D. Ill. 1985), the court required the plaintiff to disclose the identities of two witnesses because the plaintiff had already revealed that the individuals were interviewed).

Moreover, Relator's reliance on cases protecting the identity of witnesses or communications with witnesses after litigation has ensued as work product, ECF No. 129, Opp'n at 18-19, does not address Relator's obligation to provide a privilege log. The cases cited by Relator involved motions to compel the underlying documents, not the need to provide a privilege log before evaluating the withholding party's privilege claims. Relator "conflates the ultimate validity of [his] asserted privileges with [his] obligation under Rule 26(b)(5)(A) to properly catalogue all responsive documents in a privilege log." See Young v. Safeco Ins. Co. of Am., 20-CV-01816-LK, 2022 WL 2828740, at *6-7 (W.D. Wash. July 20, 2022). Indeed, as Defendants point out, in several of the cases cited by Relator, either the parties produced a log or the court required one, alongside or prior to, holding that the withheld documents were work product. See ECF No. 135, Reply at 7 (citing In re New Century, No. CV 07-0931 DDP (FMOx), 2009 WL 10691336, *26 (C.D. Cal. Dec. 7, 2009) (allowing plaintiff to withhold certain documents in response to a motion to compel but requiring a privilege log of any withheld documents); Wilson v. City of New York, 06-CV-229 (ARR) (VVP), 2008 WL 1994860, at *4-5, 11-12 (E.D.N.Y. May 7, 2008) (affirming the magistrate judge's order that denied disclosure of witnesses' written statements, but requiring a privilege log identifying witnesses from whom statements were obtained); Schoenmann v. Fed. Deposit Ins. Corp., 7 F. Supp. 3d 1009, 1012 (N.D. Cal. 2014) (party claiming privilege provided a privilege log prior to motion to compel underlying documents)).

Where Relator does cite cases addressing a privilege log,[3] those cases do not support a wholesale refusal to "produce privilege logs regarding their communications with witnesses." See ECF No. 129, Opp'n at 20. Rather, the cases cited by Relator, at most, support that Relator need not identify certain categories of information in a log: (1) undisclosed witnesses that were interviewed or (2) interviews and communications that occurred after the commencement of the litigation. See Phillips v. Hanover Ins. Co., CIV-14-871-R, 2015 WL 1781873, at *8 (W.D. Okla. Apr. 20, 2015) (no log required for an interrogatory that requested only "all persons contacted and/or interviewed"); State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc., 6:06-cv-1757-Orl-GJK, 2008 U.S. Dist. LEXIS 126501, at *18 (M.D. Fla. Apr. 17, 2008) (noting that "[c]ourts are split as to whether the identity of witnesses is protected from discovery as work product" but declining to compel a log naming witnesses interviewed because the court had already determined the documents at issue were work product); McIntyre v. Delhaize Am., Inc., 8:07-cv-2370-T-30MSS, 2008 U.S. Dist. LEXIS 127581, at *8 (M.D. Fla. June 26, 2008) (noting that a privilege log is not needed for each interview conducted after the litigation ensued); Arugu v. City of Plantation, 09-61618-CIV-ZLOCH/ROSENBAUM, 2010 WL 11515702, at *9 (S.D. Fla. Oct. 26, 2010) (no log required where defendants' discovery response identified two post-litigation witness statements and "provided all information except for the content of the [] statements" and a local rule did not require parties to list post-litigation work product).

Besides the identity of undisclosed witnesses, "it is not 'obvious to the Court why producing a privilege log would itself reveal [Relator's] privileged information . . . [and Relator's] vague references to litigation strategy will not suffice." PostX Corp. v. Secure Data Motion, No. C 02-04483 SI, 2004 WL 2623234, at *1 (N.D. Cal. June 9, 2004). Defendants are correct that "[a]t this point, the [D]efendants and the Court have no way of knowing what communications with third parties Relator is withholding" to "evaluate the validity of withholding those unidentified documents." ECF No. 122, MTC at 15. For example, "[m]erely gathering documents from third parties does not gloss the documents with an attorney's mental impressions[.]" In re New Century, 2009 WL 10691336, at *5 (internal citations and quotation marks omitted). As the court in In re New Century explained:

> Attorneys generally view all documents—as part of their investigation and representation of a client—gathered and/or produced prior to and during a case and make assessments as to the purpose, if any, of each document in the litigation. However, under plaintiff's view, protecting documents 'reviewed by Plaintiff's Lead Counsel as part of its investigation' could result in virtually all documents being withheld on work-product grounds. Such an approach is untenable and would 'derogate from the search for the truth.'

---

[3] The Court does not agree with Defendants that "Relator's cases rejecting requests to list the identities of witnesses interviewed" in response to an interrogatory "are inapplicable here." See ECF No. 135, Reply at 8. They are applicable to the extent they support the position that Relator need not identify undisclosed witnesses. In a response to an interrogatory, assertion of the privilege or work product doctrine would appear to be sufficient; whereas, the creation of a privilege log would be applicable to a corresponding Request.

Id. (citing Roberts, 123 F.R.D. at 635). Additionally, it is not clear that all communications between Relator and third-party witnesses that are not made by Relator in anticipation of litigation are protected work product, but may have been to obtain information regarding Relator's competitors (who are also Defendants in this action). At least some of the third-party witnesses appear to have had a pre-existing relationship with Relator. For example, Relator hired Mr. Querol a few months after he left Advanced Dermatology. ECF No. 193, Suppl. Brief at 7. It is conceivable that certain communications and documents exchanged between Relator and his employee, Mr. Querol, or "with current or former employees, agents, contractors, or vendors of Advanced Dermatology or Dr. Mitchell," ECF No. 129, Opp'n at 17 (referring to RFP No. 44), may be relevant and not subject to work product protections. See Griffith v. Davis, 161 F.R.D. 687, 698-99 (C.D. Cal. 1995) ("The work product doctrine does not protect materials assembled in the ordinary course of business. Rather, the *primary* motivating purpose behind the creation of the materials must be as an aid in possible future litigation.")

Even if all documents withheld are work product, a privilege log is appropriate because Rule 26(b)(3)(A)(ii) makes clear that "fact work product" may be discoverable upon a proper showing of substantial need and undue hardship in obtaining equivalent documents. Relator's argument that Defendants have not made a showing of substantial need for a privilege log puts the cart before the horse. ECF No. 129, Opp'n at 29. Without knowing what specific documents are being withheld, Defendants cannot argue that there is a need for the documents or that they cannot be obtained by other means. See Young, 2022 WL 2828740, at *3 (noting that the failure to provide a privilege log "effectively concealed the existence of an additional 48 responsive documents," which "deprived [plaintiffs] of a chance to litigate the propriety of those withholding"); see also Wilson, 2008 WL 1994860, at *4 ("[D]isclosure [on a privilege log] of the names of witnesses from whom plaintiff had obtained statements is necessary to assess whether to bring a motion pursuant to Rule 26(b)(3)(A)(ii) to obtain these statements.").

Finally, Relator has not established that producing a document-by-document privilege log for communications with witnesses would be unduly burdensome because: (1) the volume of documents at issue is unclear and (2) not all the documents are "plainly privileged" as discussed previously. See ECF No. 129, Opp'n at 21. And even if they were, again, Relator's own authority supports that such a claim of privilege must be supported by more than his blanket assertions. See In re Aetna Inc. Litig., No. CV 19-04035-JFK (JEMx), 2020 U.S. Dist. LEXIS 96022, at *4-5 (C.D. Cal. Mar. 6, 2020) (no privilege log needed where the withholding party "supported its privilege/work product assertions with the [d]eclaration [of a witness] who was notified about [the] incident [at issue] and immediately directed and supervised [the party's] investigation").

Therefore, the Court finds it appropriate that Relator produce a document-by-document privilege log responsive to Requests seeking documents or communications exchanged with third-party witnesses in accordance with the requirements set out in Rule 26, at least including those that that were obtained prior to initiation of litigation and provided to the United States in order to assess whether the United States should intervene, including: (1) a description of the responsive material withheld; (2) the author or "the attorney and client involved;" (3) "all persons or entities shown on the document to have received or sent the document;" (4) "all persons or entities known to have been furnished the document or informed of its substance;" (5)

"the date the document was generated, prepared, or dated;" and (6) the specific reasons for the document being withheld, including the privilege invoked and grounds thereof. See In re Grand Jury Investigation, 974 F.2d at 1071 (citing Dole, 889 F.2d at 888 n.3). However, Relator need not identify the names of undisclosed witnesses whom Relator's counsel interviewed in connection with this litigation, nor is Relator required to include information regarding communications after the initiation of this action, other than those materials identified previously.

### 2. Communications with the Government.

Relator argues that "Relator's communications with the [Government] are protected from disclosure under the common interest doctrine, either as attorney-client privilege or under the work product doctrine," and because those communications "are overwhelmingly likely to be protected from discovery," a privilege log is not necessary. ECF No. 129, Opp'n at 30. The issue with Relator's position with respect to communications with the Government is nearly identical to his arguments regarding communications with witnesses: (1) whether his claims of privilege or protection are valid as to certain categories of documents does not obviate his duty to catalogue other withheld documents, and (2) it is not clear, at this stage, that all responsive documents are protected from disclosure.

Relator must comply with Rule 26's requirements to describe withheld documents, and Relator's case law does not suggest otherwise. In many of Relator's cases, a privilege log was either provided by the party withholding documents or required by the court, even if some categories of documents were excluded. See Burroughs, 167 F.R.D. at 682 (plaintiff provided a privilege log); U.S. ex rel. Brown v. Celgene Corp., CV 10-31 GHK (SSS), 2015 WL 12731923, at *26 (C.D. Cal. July 24, 2015) ("Relator. . . shall also provide Defendant with a privilege log sufficient for it to test the assertion of work product protection or other privileges over any redacted portions of" the disclosure statement and other documents submitted to the government); Ryan Inv. Corp. v. Pedregal De Cabo San Lucas, C-063219 JW (RS), 2009 WL 5114077, at *9 (N.D. Cal. Dec. 18, 2009) ("Plaintiff's motion to compel is therefore denied to the extent it seeks to require a log of post-litigation counsel communications or work product, but is granted to the extent that any other materials withheld on privilege grounds must be accounted for on a privilege log."); iSmart Int'l Ltd. v. I-Docsecure LLC, No. C 04-03114 RMW (RS), 2006 WL 2263910, at *3 (N.D. Cal. Aug. 8, 2008) (instructing the withholding party to review its preexisting privilege log); Citizens Dev. Corp. v. City Of San Diego, 12CV0334-GPC (KSC), 2019 WL 172469, at *38 (S.D. Cal. Jan. 11, 2019) (requiring amended privilege logs for all withheld documents except "attorney client or work-product/ common interest documents that were created after this litigation was initiated"); Lew v. City of Los Angeles, CV 20-10948-DDP (PLAx), 2022 U.S. Dist. LEXIS 85468, at * 28 (C.D. Cal. Apr. 21, 2022) (requiring a privilege log for pre-complaint documents or communications "to enable plaintiff to evaluate the applicability of the privilege or other protection").

In other cases cited by Relator, the courts did not address a privilege log at all. See, e.g., Purcell, 209 F.R.D. at 21; Bagley, 212 F.R.D. at 554; U.S. ex rel. Fisher v. JPMorgan Chase Bank, N.A., 4:16-CV-00395, 2020 WL 3265060, at *11 (E.D. Tex. June 17, 2020); U.S. ex rel. Mikes v. Straus, 846 F. Supp. 21 (S.D.N.Y 1994); Black v. Sheraton Corp. of Am., 564 F.2d.

531 (D.C. Cir. 1977); U.S. ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Civil No. 99-3298, 2004 U.S. Dist. LEXIS 18747 (D.D.C. May 17, 2004)).

      Where Relator's cases do address a privilege log, the courts only hold that the party may exclude from the log attorney-client communications or work product dated after the commencement of litigation. See ECF No. 129, Opp'n at 30-31 (citing cases). None of these cases, however, address communications with the Government in a qui tam suit. On the other hand, Defendants provide at least three cases holding that a privilege log is appropriate for communications with the Government in a qui tam action.[4] ECF No. 122, MTC at 14 (citing Reddell, 2019 WL 12875494, at *8 (privilege log for pre-complaint communications with the government in a qui tam suit); U.S. ex rel. Simms v. Austin Radiological Ass'n, A-10-CV-914-AWA, 2013 WL 1136668, at *41 (W.D. Tex. May 17, 2012) (finding that communications with government are work product even where the government declines to intervene and requiring a privilege log); Lewis, 2020 WL 13547790, at *14 (compelling a privilege log for communications with the government upon defendants' request "that, if appropriate, a challenge can later be made with respect to the withheld documents").

      Moreover, the Court finds that Relator's arguments regarding the validity of his protection and privilege claims do not justify the failure to provide a privilege log. First, the common interest doctrine does not create an independent privilege or protection, but rather "is an exception of waiver of the attorney-client privilege" or work product doctrine. Rodriguez, 620 F. Supp. 3d at 1019; see also Burroughs, 167 F.R.D. at 686 ("As a result [of the common interest doctrine], plaintiff's disclosure of the documents to the government did not result in waiver of the work-product immunity, if that protection applies.") (emphasis added); Bagley, 212 F.R.D. at 562 (first addressing whether disclosure statements are work product and then addressing whether "relator's disclosures of work product (including the written disclosure statement) to the government [] operat[es] as a waiver"). Thus, assuming arguendo that the common interest doctrine applies to cases where the government has not intervened (which the Court declines to address on this Motion), it is still not clear that all communications with the Government in a qui tam suit, pre- or post-filing of the complaint, are work product, or if they are, whether they constitute fact (discoverable) or opinion (virtually undiscoverable) work product.

      As to disclosure statements, the Court finds Lewis, 2020 WL 13547790 instructive. In Lewis, the court surveyed several district court cases analyzing whether disclosure statements are work product and observed that:

> [C]ourts across the country have reached four different conclusions: (1) the disclosure statement should be produced in its entirety[;] (2) the disclosure

---

[4] Defendants cite Schaefer v. Family Med. Ctrs. of S.C., LLC, 3:18-cv-02775-MBS, 2019 WL 2135675 (D.S.C. May 16, 2019) as well, but Relator correctly points out the Schaefer court compelled a privilege log "given the narrow waiver of attorney client privilege, but limited the scope of the log to the time period relevant to settlement negotiations." ECF No. 129, Opp'n at 32. Given that the Schaefer court ordered a privilege log in the context of waiver, the Court finds this case unpersuasive as to Defendants' position regarding whether a log is required before a motion to compel or waiver is at issue.

> statement is not discoverable because the whole statement is opinion work product[;] (3) the disclosure statement is not discoverable because the defendant cannot demonstrate substantial need and undue hardship[;] and (4) the disclosure statement should be produced with the opinion work product redacted.

2020 WL 13547790, at *8. The case law cited by Relator also tracks with the Lewis court's assessment that courts differ on whether or how much work product protection is afforded to disclosure statements. See Burroughs, 167 F.R.D. at 684 (ordering in camera review of disclosure statement to determine if it contained a mixture of fact and opinion work product); Fisher, 2020 WL 3265060 at * 6-7 (disclosure statement is fact work product but no substantial need for production); Bagley, 212 F.R.D. 564 (disclosure statement is opinion work product and undiscoverable); Celgene, 2015 WL 12731923, at *13 (disclosure statement to be produced with opinion work product redacted). Even if "[m]ost courts agree that the statements are at least fact work product," a privilege log would assist in determining to what extent portions of the statement is discoverable upon a proper showing by Defendants. See Lewis, 2020 WL 13547790, at *13.

As to other communications with the Government, Relator acknowledges the issue is "less frequently litigated" and cites only one case that held communications between the Government and relator's counsel "regarding settlement negotiations" were protected from disclosure. ECF No. 129, Opp'n at 29 (citing Pogue, 2004 U.S. Dist. LEXIS 18747). Defendants raise that "primary documents" not prepared in anticipation of litigation and provided to the Government, as well communications between Relator and the Government after the Government declines to intervene, may not be work product. See ECF No. 122, MTC at 13 (citation omitted); ECF No. 135, Reply at 12. The parties' briefing does not allow the Court to conclude, at this point, that these communications are definitively protected from disclosure such that a privilege log should not be required. See Bagley, 212 F.R.D. at 564 (stating that pre-existing documents attached to a disclosure statement do not constitute opinion work product). At most, it appears some courts hold that "the subsequent communications between Relator and the Government while litigation is ongoing are likewise protected by the work product doctrine." U.S. ex rel. Everest Principals, LLC v. Abbot Lab't, 20cv286-W (MSB), 2023 WL 8040762, at *4 (S.D. Cal. Nov. 20, 2023) (citing U.S. ex rel. Branch Consultants, LLC v. Allstate Ins. Co., 06-4091-SSV-SS, 2010 WL 11627441, at *5 (E.D. La. May 12, 2010)). Again, however, such communications may still be discoverable as fact work product upon proper showing.

To the extent all communications with the Government and the disclosure statement are work product, the Court disagrees with Relator that "the missing link is not a privilege log; the missing link is *any showing whatsoever* by Defendants" justifying disclosure. See ECF No. 129, Opp'n at 29. Rule 26(b)'s requirement that a party catalogue withheld documents, including work product, is not premised on a showing that disclosure of the underlying documents is appropriate. And unlike the cases that Relator relies upon where certain categories of documents are "overwhelming likely to be protected from discovery," id. at 30, that is not the case here.

Accordingly, if there are any pre-suit communications with the Government, in addition to including those in a privilege log, Relator must also provide a privilege log for the disclosure

statement and communications between Relator and the Government or the Government and Relator's counsel.

### 3.     Need for a Privilege Log Considering the Events at Mr. Querol's Deposition.

To begin, the Court examines the supplemental briefing only to determine if it further supports a Defendants' pre-existing request for a privilege log.  The Court will not rule on whether a waiver has in fact occurred or on the scope of any waiver.

The Court finds that the circumstances of Mr. Querol's deposition underscores the need for a privilege log.  First, if Relator had provided a privilege log identifying the letter that was used to refresh Mr. Querol's recollection and other communications between Relator and Mr. Querol, then Defendants could have challenged their withholding as work product prior to the deposition.  Relator's argument that Defendants knew he was generally withholding "communications to or from Mr. Querol, statements or similar documents created by or taken of Mr. Querol, and documents received from or provided to Mr. Querol" and could have moved to compel them misses the point.  ECF No. 209, Suppl. Opp'n at 10.  Defendants could not have adequately argued that the specific documents were not work product without knowing certain information that would be included on a privilege log, such as when the documents were drafted and by whom, and the general nature of the document.  This goes to the heart of what Defendants raise with respect to the events that unfolded at Mr. Querol's deposition.

At the deposition, Defendants became aware of certain details of the withheld documents, namely that one "witness" letter was drafted by Relator, id. at 3 n.3, some of the communications withheld were between Mr. Querol and Relator, which may have been in anticipation of this litigation, ECF No. 193, Suppl. Brief at 7, and that these documents were created prior to filing of the complaint, id.  Now understanding these details, Defendants suggest that these communications may have been improperly withheld.  Id. at 10-11.  The Court highlights Defendants' argument not to comment on the merits, but to show that a privilege log would have allowed Defendants to challenge Relator's privilege claims as to these documents with more specificity than generally challenging Relator's withholding of broad categories of unidentified documents.

Moreover, if these documents are work product and waiver did occur, the Court finds Defendants' argument to be persuasive that a privilege log would assist in determining what documents may be within the scope of the waiver.  Id. at 10.  Relator misconstrues Defendants' position, stating that Defendants argue use of a witness statement "forfeits all your other work product including all communications with the witness[.]"  ECF No. 209, Suppl. Opp'n at 8.  If Defendants believed that all work product or all communications with the witness were also waived, then they would be moving to compel such documents now.  Instead, Defendants are requesting a privilege log "to evaluate whether there are other documents that fairness dictates must be disclosed."  ECF No. 193, Suppl. Brief at 11.  That is because Defendants need the information that would be contained in a privilege log to argue whether other communications fall within the subject matter of the disclosed document.  This would be a more efficient use of the Court and the parties' time because it avoids litigating the waiver issue, then if waiver is

found, requiring a privilege log, and subsequently litigating the scope of the waiver. A privilege log would enable the parties to address both whether waiver occurred and its scope in one fell swoop.

Thus, without determining the merits of Defendants' waiver or "gamesmanship" arguments, the Court finds that a privilege log produced prior to Mr. Querol's deposition would be helpful to narrow some of the issues allegedly presented by Relator's use of the letter withheld as work product at the deposition.

### III. CONCLUSION

For the reasons set forth previously, Advanced Dermatology's Motion to Compel is **GRANTED.** Accordingly, within one week from the issuance of this Order, the parties are to discuss the timing of the production of a privilege log in accordance with this Order—the parties may also agree to extend this deadline in light of the Holiday Season. But in any event, such a meeting and agreement as to timeline must be arrived at by January 5, 2024. If an agreement has not been reached, the parties are to notify the Court so that a informal conference may be held during the week of January 8, 2024. Finally, Defendants are also ordered to comply with the requirements of Rule 26 pertaining to the production of a privilege log.

**IT IS SO ORDERED.**